UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE MOORE, as Personal
Representative for the Estate of BOOKER
THOMAS MOORE, deceased,

                    Plaintiffs,                        Case Number 20-10277
v.                                             Honorable David M. Lawson

EVAN KATIN-BORLAND,
ANTHONY J. TARRICONE,
KREINDLER & KREINDLER, LLP,
KONSTANTINE WILLIAM KYROS, AND
KRYOS LAW OFFICES,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS OR TRANSFER VENUE, AND TRANSFERRING VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

In this legal malpractice case, the defendants — lawyers and law firms from New York and Massachusetts — have moved to dismiss this case for want of personal jurisdiction. Alternatively, they ask that the case be transferred to the Southern District of New York, thereby enforcing a forum selection clause found in their retainer agreement. Transfer, rather than dismissal, is the preferred remedy when a district court lacks personal jurisdiction over a defendant. 28 U.S.C. § 1631. Even if this Court had personal jurisdiction, the forum selection clause is valid and enforceable. Therefore, the Court will transfer this case to the United States District Court for the Southern District of New York.

I.

Plaintiff Stephanie Moore's late husband played in the National Football League (NFL) in the 1980s and suffered from chronic traumatic encephalopathy (CTE), a common brain injury among football players, which was discovered in a post-mortem examination.  After retiring from football, he served as a Genesee County, Michigan sheriff's deputy until he died of a heart attack on September 20, 2009.  The Genesee County Medical Examiner conducted Booker Moore's autopsy and preserved tissues from his brain for subsequent neuropathological investigation to determine whether he suffered from football-related brain injuries.

Moore contacted the Kyros Law Offices, based in Massachusetts, in response to information posted on its website about ongoing personal injury litigation for former NFL players. Her contacts with the Kyros firm eventually connected her with Kreindler & Kreindler, LLP, a personal injury law firm based in New York specializing in product liability, transportation, and mass torts.

Moore never spoke in person with any attorneys from either law firm, nor did she have a personal telephone conference interview.  The attorneys responsible for her case, Evan Katin-Borlan and Anthony Tarricone at Kreindler & Kreindler, LLP (the Kreindler defendants), and Konstantine William Kyros at the Kyros Law Offices (the Kyros defendants), sent her a retainer agreement, which Moore signed and mailed back on June 12, 2012.  In that agreement, the defendants promised to "prosecute claims on behalf of [her] late husband's estate for wrongful death, and traumatic brain injuries he sustained while playing in the NFL."  The retainer agreement included a forum selection clause, which read: "It is agreed that any disputes arising under this agreement or the services rendered here under [sic] shall be venued [sic] in New York and governed by New York law."

Neither law firm has an office in Michigan, and none of the individual defendants ever litigated a case in Michigan.  The Kreindler defendants hired a Michigan probate attorney to help the plaintiff open a probate estate so that she could pursue a claim on behalf of her late husband.  On July 13, 2012, the Kreindler defendants filed suit on the plaintiff's behalf in the Eastern District of Pennsylvania.  The multidistrict litigation in which the individual claim was brought eventually converted into a class action.  That class action was settled in 2014.

The NFL concussion settlement agreement was initially approved in July 2014, then amended on February 13, 2015.  Under the amended settlement agreement, individuals asserting a claim based on a post-mortem diagnosis of CTE were required to obtain such a diagnosis before the settlement's final approval date of April 22, 2015.

Back in October 2012, defendant Tarricone (of the Kreindler firm) requested from the Genesee County Medical Examiner a list of all records, specimens, and slides that may contain Booker Moore's brain tissue.  The Medical Examiner's office reported on October 22, 2012, that it had 11 paraffin blocks that could be used to make slides.  Tarricone acknowledged the existence of the paraffin blocks on November 1, 2012, but he stated that his firm preferred to have to the blocks preserved instead, and that he would request the slides later.

The defendants missed the April 22, 2015 deadline, resulting in a loss of scheduled compensation from the NFL concussion settlement in excess of $2 million.  The parties disagree as to why.  According to the plaintiff, the defendants were simply negligent.  Between November 5, 2012, and June 23, 2015, the defendants never communicated with the Genesee County Medical Examiner.  And they never discussed with Moore the April 22 deadline, collection of tissue samples, or contact with medical experts.  It was not until June 23, 2015, two months after the settlement's deadline, that Kreindler requested that the Genesee County Medical Examiner send

11 slides from paraffin blocks directly to Dr. Douglas C. Miller in Missouri, whom the defendants retained as an expert witness.

The defendants tell a different story.  They say that before the April 22, 2015 deadline, they could not find an expert who would support a CTA diagnosis.  They were not able to locate Dr. Miller until after the deadline passed.  Nonetheless, with Dr. Miller's opinion in hand, they filed an untimely claim on Moore's behalf with the Virginia-based claims administrator.  Predictably, the initial claim and subsequent appeal failed due to the timing of the post-mortem CTE diagnosis.

The plaintiff commenced this legal malpractice action on February 4, 2020, invoking this Court's diversity jurisdiction.  28 U.S.C. § 1332(a).  The defendants responded with their motion to dismiss the case for want of personal jurisdiction or, alternatively, to transfer the action based on the forum selection clause.

## II.

When personal jurisdiction is challenged in a motion filed under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).  When the motion is supported by properly documented factual assertions, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction."  *Ibid.*

Although dismissal may be appropriate when a court does not have personal jurisdiction over a defendant, it is not the preferred remedy.  Instead, "the court shall . . . transfer such action . . . to any other such court . . . in which the action . . . could have been brought," as long as the

transfer "is in the interest of justice."  28 U.S.C. § 1631.  In their retainer agreement, the defendants all agreed that an action against them "shall be venued [sic] in New York," and therefore this case "could have been brought" in a court located there.  And even if this Court has personal jurisdiction over the defendants, the impact of the forum selection clause still must be assessed to determine whether it compels transfer of this case.  *Atl. Marine Constr. Co., Inc. v. United States Dist. Ct.*, 571 U.S. 49, 63 (2013).

Subject matter jurisdiction over this case is based on diversity of citizenship, and therefore state law governs substantive questions, and matters of procedure are governed by federal law, as long as the federal rule does "not abridge, enlarge or modify any substantive right."  *See* 28 U.S.C. § 2072(b); *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938); *see also Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (reiterating the "long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law'") (quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965)).  Questions about proper venue are procedural, and therefore, in diversity suits, "the enforceability of [a] forum selection clause is governed by federal law." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).

A district court may transfer a civil action to another district where it could have been brought "for the convenience of the parties and witnesses."  28 U.S.C. § 1404(a).  The factors that generally drive the transfer decision are categorized as the parties' "private interests" (their convenience and the convenience of potential witnesses) and "public-interest concerns" (systemic integrity and fairness).  *Moses v. Bus. Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991).  However, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways."  *Atl. Marine*, 571 U.S. at 63.

First, the forum selection clause preempts the plaintiff's venue privilege, so that "the plaintiff's choice of forum merits no weight." *Ibid.* Second, because the parties made their choice of forum in their contract in advance of the dispute, the private interest factors are irrelevant to the analysis, because they "must [be] deem[ed] . . . to weigh entirely in favor of the preselected forum." *Id.* at 64. A court considering a forum selection clause must focus its analysis solely on the public interest factors, but "those factors will rarely defeat a transfer motion." *Ibid.* Third, when a party files a lawsuit in a forum other than prescribed by the contract's forum selection clause, in contravention of the contract, the transferor district's choice-of-law rules will not apply as they otherwise might, which is "a factor that in some circumstances may affect the public interest considerations." *Ibid.* Thus, "a proper application of § 1404(a) requires that a [valid] forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 579 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

The plaintiff does not dispute the existence of a forum selection clause in this case, nor does she contest that it is clear and mandatory. Instead, she argues that the forum selection clause is unenforceable and that the public interest factors override it.

A.  Enforceability

A forum selection clause "should control absent a strong showing that it should be set aside." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991). The following factors bear on the enforceability question: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at 828 (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). The party opposing the forum

selection clause bears the burden of showing that the clause should not be enforced. *Shell v. R.W. Sturge, Ltd*., 55 F.3d 1227, 1229 (6th Cir. 1995).

Moore argues that the forum selection clause is unenforceable because it is unconscionable. Under federal common law, forum selection clauses are to be interpreted by reference to ordinary contract principles, borrowing those rules from state law when appropriate. *In re Delta Am. Re Ins. Co*., 900 F.2d 890, 892 (6th Cir. 1990). "Michigan law requires a party to demonstrate both procedural and substantive unconscionability" to find a contract term invalid. *Whirlpool Corp. v. Grigoleit Co*., 713 F.3d 316, 321 (6th Cir. 2013) (citing *Pichey v. Ameritech Interactive Media Servs., Inc*., 421 F. Supp. 2d 1038, 1044-45 (W.D. Mich. 2006)). "Procedural unconscionability is determined by evaluating the bargaining power of the parties, their relative economic strength, and their alternative sources of supply." *Ibid.* (citing *Gianni Sport Ltd. v. Gantos, Inc.,* 151 Mich. App. 598, 391 N.W.2d 760, 761-62 (1986)). "[T]he most important factors in determining procedural unconscionability are (1) whether the relatively weaker party had an alternative source with which it could contract, and (2) whether the contract term in question was in fact negotiable." *Ibid.* (citing *Andersons, Inc. v. Horton Farms, Inc*., 166 F.3d 308, 324 (6th Cir. 1998)).

Moore argues that she had no bargaining power compared to the defendants, who are sophisticated attorneys, and that they made no effort to balance the inequitable bargaining positions by personal contact or meaningful explanation. She was never advised to consult independent counsel and "did not negotiate a single term in the boilerplate agreement."

Moore is correct that her bargaining position "pales in comparison" to the two law firms, one of which is national (Kreindler), the other international (Kyros). But they were not the only attorneys available to take her case. Moore argues that the "[d]efendants advertised that they were handling hundreds of claims under the [NFL concussion] settlement," and therefore "[t]hey were,

as far as [Moore] knew, the attorneys whom one needed to hire to join the class." Yet she offers

no proof that they actually were the only attorneys handling cases related to the NFL settlement.

To the contrary, an internet search would have revealed alternative "sources of supply" for

attorneys capable of handling Moore's claim. *See* Zapczynski Aff., ECF No. 12-3, PageID.123

("our office received an advertisement letter from a law firm in Texas offering to represent Mr.

Moore's estate in the NFL concussion litigation."). That fact severely undercuts Moore's

argument. *See Allen v. Mich. Bell Tel.*, 18 Mich. App. 632, 638, 171 N.W.2d 689, 692 (1969) (A

finding of unconscionability requires "an absence of meaningful choice on the part of one of the

parties"); *St. Paul Fire and Marine Ins. Co. v. Guardian Alarm Co*., 115 Mich. App. 278, 283-84,

320 N.W.2d 244, 247 (1982) (limitation of liability clause not unconscionable where defendant,

producer of burglar alarms, lacked effective monopoly over the industry). Moore has not shown

"that [the defendants] had the sort of monopolistic power described in *Allen*." *Pichey,* 421 F. Supp.

2d at 1049.

   Nor has Moore shown that the forum selection clause is substantively conscionable.

   "Whether a contractual provision is substantively unreasonable or unconscionable depends

on the commercial setting, purpose and effect of the provision." *Ibid.* (citing *Mich. Ass'n. of

Psychotherapy Clinics v. Blue Cross*, 101 Mich. App. 559, 575, 301 N.W.2d 33, 41 (1980), *set

aside in part on other grounds*, 411 Mich. 869 (1981)). "Reasonableness is the primary

consideration." *Ibid.* (citing *St. Paul Fire*, 115 Mich. App. 278, 320 N.W.2d 244).

   Moore posits that "the forum selection clause is . . . substantively unreasonable because the

contract terms unreasonably favor the defendants." Resp. ECF No. 12, PageID.106. But Michigan

courts have made clear that a "contract is not substantively unconscionable simply because it is

foolish for one party and very advantageous to the other." *Pichey,* 421 F. Supp. 2d at 1049 (citing

*Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 144-45, 706 N.W.2d 471, 475 (2005). "Instead, a provision is substantively unreasonable 'where the inequity of the term is so extreme as to shock the conscience.'" *Ibid.*

Considering that the choice of situs of this litigation inevitably will inconvenience one side or the other, Moore has not shown that litigating the claim in the defendants' home state, as opposed to her home state, shocks the conscience. Nor has she cited any authority on that point. Moore has failed to demonstrate that the forum selection clause is either procedurally or substantively unconscionable.

Moore also contends that the designated forum — a court in New York — could not handle the lawsuit effectively. She bases that argument on statistics compiled under the Civil Justice Reform Act showing that the district court in the Southern District of New York has a considerable backlog of civil cases. One metric states that 1,084 cases were pending more than three years in that district compared to 281 in this district. She also references the number of motions per judge pending more than six months. Those numbers contribute only to the most superficial of analyses; without drilling down to spread the number of cases over the census of active and senior district judges, and evaluating how many of the cases with pending motions are part of MDLs or are fraught with individual complications, a federal district court's gross case volume alone will not predict how long a new lawsuit will take to process from filing to trial or the quality of justice dispensed. Moreover, even if Moore's case might take longer to prosecute, she would enjoy the same procedural and substantive rights afforded to her by this Court.

Nor has Moore established that "enforcement of the [forum selection] clause would be so inconvenient such that its enforcement would be unjust or unreasonable." *Wong*, 589 F.3d at 829 (citing *Assocs. of Urology*, 453 F.3d at 722–23). To prevail on that factor, Moore must show

"more than mere inconvenience." *Ibid*.  The Sixth Circuit has "previously held that enforcement of a forum selection clause would not be unreasonable where the opposing party failed to produce any evidence that it was exploited or unfairly treated." *Ibid*. (citing *Siempelkamp GmbH & Co*., 29 F.3d 1095, 1099 (6th Cir. 1994).  And "the Supreme Court has held that a forum selection clause is not unreasonable simply because it appears in a non-negotiated consumer contract." *Ibid*. (citing *Shute*, 499 U.S. at 594).  The plaintiff faces a "'heavy burden' of showing that enforcing this forum selection clause would be unjust or unreasonable," *ibid*. (quoting *Shute*, 499 U.S. at 595), which she has not carried.

Moore suggests that nearly every relevant witness in her case is Michigan-based.  She argues that she is a widowed pensioner of modest financial means and cannot come to New York to pursue her case, while the defendants are sophisticated attorneys and firms capable of litigating in Michigan.  But those observations, although undoubtedly true, do not demonstrate that Moore was exploited or treated unfairly.  She signed the agreement without consultation, without understanding what "venue" meant; but she was not tricked or forced into consenting to the forum selection clause.  She could have followed up with the law offices to review the terms of the retention agreement that she voluntarily signed after receiving it in the mail, but she did not.  Courts have long recognized forum selection clauses as a legitimate means of allocating in advance the relative inconvenience of one party or another having to travel to prosecute or defend a claim.  See, for example, *Carnival Cruise Lines*,  where the Supreme Court found that a forum selection clause was reasonable and enforceable because there were legitimate business reasons for the defendant to establish a specific forum for adjudicating its disputes and because the forum selected was not a "remote alien forum," but the cruise line's principal place of business.  499 U.S. at 593-95.

Because the forum selection clause is not unconscionable, the Southern District of New York is an effective and fair forum for handling Moore's claim, and litigating this action in the Southern District of New York would not be so inconvenient such that the forum selection clause's enforcement would be unjust or unreasonable.  The clause is valid and enforceable in this case.

### B.  Public Interest Factors

The Supreme Court in *Atlantic Marine* recognized that in a rare case, the public interest factors could derail a forum selection clause in a contract.  571 U.S. at 60.  Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n.6, (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

The public interest factors do not override the forum selection clause here.  As discussed above, the relative congestion in the courts in these two federal districts plays a minor role in the assessment.  It does not furnish an "exceptional" reason for overriding the parties' agreement. Neither forum has a stronger interest in the case than the other.  Michigan has an interest in providing remedies for its injured citizens, while New York has an interest in regulating the conduct of its licensed attorneys.  There is no concern of "burdening citizens in an unrelated forum with jury duty." *Piper*, 454 U.S. at 260 n.6.  And Moore does not argue that the public interest factors favor Michigan due to conflicts of law principles, a difficult argument to make here because of the choice-of-law clause in the same retainer agreement.

-11-

This dispute does not constitute one of the "most exceptional cases" for which the Court should ignore the parties' valid forum selection clause. *Atl. Marine*, 571 U.S. at 60.   That clause must be "given controlling weight."   *Ibid.*

III.

There is no reason to dismiss this lawsuit for want of personal jurisdiction when transferring the case is an available and preferred remedy.   The forum selection clause in the parties' retainer agreement is valid and enforceable, and it requires that the case be transferred to the federal court in the Southern District of New York.

Accordingly, it is **ORDERED** that the motion to dismiss or transfer venue (ECF No. 10) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the Clerk of Court shall **TRANSFER** this case to the United States District Court for the Southern District of New York.   The motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   September 14, 2020

-12-